**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **D.C.G. and P.J.G on behalf of the minor child, E.M.G.,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **Case No.: 07-cv-1357** |
| | : | |
| **WILSON AREA SCHOOL DISTRICT, et al.** | : | |
| | : | |
| **Defendants** | : | |

GOLDEN, J.                                                          MARCH 25, 2009

<u>**MEMORANDUM OPINION & ORDER**</u>

This lawsuit arises out of alleged sexual abuse engaged in by Walter Palmer, a teacher, against Plaintiff E.M.G., a minor female child, while E.M.G. was enrolled at Philip F. Lauer Middle School in Easton, Pennsylvania during the 2003-2004 school year.  E.M.G.'s parents, Plaintiffs D.C.G. and P.J.G., brought this lawsuit against the Wilson Area School District, Superintendent Doug Wagner, and Principal Dennis Harper (collectively, "Defendants") on behalf of E.M.G. for violations of her constitutional right to bodily integrity pursuant to 42 U.S.C. § 1983.[1]  Superintendent Doug Wagner and Principal Dennis Harper are sued in their official and individual capacities.[2]  Plaintiffs further assert, as an independent basis of liability, that a "special custodial relationship" existed between E.M.G. and Defendants under the Due

---

[1] Plaintiffs specifically allege deprivations of E.M.G.'s "liberty interest to be free in her person from threats, intimidation and sexual abuse and misconduct." (Compl. ¶ 30).  Plaintiffs claim, among other things, that the Wilson Area School District had actual and/or constructive notice of previous incidents of sexual misconduct engaged in by Walter Palmer and failed to take proper disciplinary action to prevent the abuse of E.M.G.  (<u>Id.</u> ¶¶ 23-25).

[2] <u>See</u> <u>infra</u> note 5.

Process Clause, thereby imposing an affirmative duty on Defendants to protect E.M.G.  (Compl. ¶ 29, 36, 43).

Defendants have moved for summary judgment, claiming that (a) Plaintiffs have failed to state a cause of action under 42 U.S.C. § 1983, (b) Plaintiffs have failed to state a cause of action under the "special custodial relationship" theory, (c) the doctrine of qualified immunity entitles Superintendent Doug Wagner and Principal Dennis Harper to immunity from liability, and (d) Plaintiffs have failed to state a claim for punitive damages.  (Doc. No. 35).  Approximately nine months after Defendants filed their motion for summary judgment, Plaintiffs filed a notice requesting that the Clerk of Court withdraw Plaintiffs' Complaint without prejudice, which the Court will construe as a Motion for Voluntary Dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure.  (Doc. No. 61).  Defendants oppose Plaintiffs' request for voluntary dismissal.  After careful consideration of the briefs submitted by the parties, Plaintiffs' Motion for Voluntary Dismissal under Rule 41(a)(2) is denied and Defendants' motion for summary judgment is granted.[3]

## FACTUAL BACKGROUND

During the events giving rise to this lawsuit, minor Plaintiff E.M.G. was twelve years old

---

[3] Third-Party Defendant Walter Palmer's Motion to Vacate the Default Judgment (Doc. No. 47) and Defendants' Motion *in Limine* (Doc. No. 59) are also before the Court.  By way of background, the Court granted Defendants' motion to join Walter Palmer as a co-defendant.  (Doc. No. 13).  Defendants then filed a Third-Party Complaint against Walter Palmer asserting that, if Plaintiffs' allegations are true, then Plaintiffs' damages "are not the result of any negligence on the part of WASD, Wagner and Harper, but were the result of the negligence of Palmer."  (Doc. No. 14 ¶ 15).  On March 31, 2008, after Walter Palmer failed to appear, the Court granted Defendants' Petition for Default Judgment and stated that Defendants would be entitled to damages against Walter Palmer "[i]f defendants are found liable."  (Doc. No. 28).  Plaintiffs have not asserted any claims against Walter Palmer in this action.  Because Defendants cannot be found liable, Third-Party Defendant Walter Palmer's Motion to Vacate the Default Judgment and Defendants' Motion *in Limine* are denied as moot.  Therefore, the Court will omit any further analysis on these motions and an appropriate Order follows.

and a seventh-grade student at Philip F. Lauer Middle School—a school located within the Borough of Wilson and operated by the Wilson Area School District ("WASD" or "School District"). (Compl. ¶ 13). E.M.G. was assigned to the homeroom and English classes of Third-Party Defendant Walter Palmer ("Palmer" or "Third-Party Defendant") during the 2003-2004 school year. (Id. ¶¶ 12, 14). During this school year, Plaintiffs allege that Palmer sexually abused E.M.G. during several incidents, which occurred over a five-month time period. It is alleged that, between October 2003 and February 2004, Palmer (a) touched E.M.G.'s shoulders and neck and played with her hair, (b) held and rubbed E.M.G.'s hands in an inappropriate manner, (c) continually complimented E.M.G. on her physical appearance, (d) made comments to E.M.G. that she should be on medication; (e) asked E.M.G. if she "slept around with guys," (f) looked down E.M.G.'s blouse after she was removed from gym class by Palmer to take down a Christmas tree, (g) wrote the word "NOT" on an index card and physically taped the index card to E.M.G.'s chest while she was wearing a shirt that bore the word "PERFECT," and (h) cupped E.M.G's breasts. (Id. ¶¶ 15-20; Pls.' Stmt. of Facts ¶ 11; E.M.G. Dep. at 22-48; Pls.' Ex. 16). The last incident is alleged to have occurred on February 6, 2004. (Compl. ¶ 20).

On February 9, 2004, E.M.G. reported these incidents to non-party Raymond Post ("Post"), a Vice Principal at Philip F. Lauer Middle School. (Id. ¶ 21; Defs.' Stmt. of Facts ¶ 8). Also on February 9, other female students lodged complaints against Palmer. (Defs.' Stmt. of Facts ¶ 12). Prior to E.M.G.'s complaint to school officials, she had not told anyone about these alleged incidents, not even her parents. (Id. ¶ 9). WASD immediately began a preliminary investigation. (Id. ¶ 11). E.M.G. and the other students were instructed to write down their complaints, and Post then took the written complaints to Defendant Principal Dennis Harper

3

("Harper").  (Id. ¶¶ 14-15; Pls.' Ex. 16).  That same day, Harper interviewed E.M.G. and three

other students as part of the preliminary investigation.  (Defs.' Stmt. of Facts ¶¶ 18-19).

On February 10, 2004, additional students were interviewed.  (Id. ¶ 20).  That morning,

Harper and a Wilson Area Education Association ("WAEA") representative met with Palmer.

During this meeting, Harper and the WAEA representative notified Palmer that several girls had

filed complaints of inappropriate behavior against Palmer, and that an investigation into his

actions would be conducted.  (Id. ¶ 21).  Palmer was instructed during this meeting that he was

being immediately placed on paid administrative leave.  (Id.).  On February 19, 2004, an

investigator interviewed E.M.G. and other complaining female students.  (Id. ¶ 22).  On March 1,

2004, School District officials, including Defendant Superintendent Doug Wagner ("Wagner"),

met with Palmer, and the officials informed him that he would be placed on suspension without

pay as of March 2, 2004.  (Id. ¶ 23; Pls.' Stmt. of Facts ¶ 23; Defs.' Ex. 5).  On March 2, 2004,

Wagner sent Palmer a letter memorializing what was discussed during the meeting.  (Defs.' Ex.

5).  On March 3, 2004, the School District provided Palmer with written notice of its decision to

suspend Palmer without pay, with the possibility of termination of employment after a hearing

before the WASD Board.  (Defs.' Ex. 6; Pls.' Stmt. of Facts ¶ 23).  Palmer then filed a grievance,

and the matter proceeded to arbitration on the question of whether Palmer should be terminated.

(Pls.' Stmt. of Facts ¶ 25).  On May 16, 2006, after four hearings, an arbitrator reinstated Palmer

with back pay and benefits.  (Defs.' Ex. 12).

WASD has an "Unlawful Harassment" policy.  This policy is in the Student Handbook,

which is distributed to students at the beginning of every school year.  (Harper Dep. at 9).  This

"Unlawful Harassment" policy states that "complaints of harassment shall be investigated

4

promptly and corrective action be taken when allegations are substantiated." (Defs.' Ex. 11, at 34).

## VOLUNTARY DISMISSAL WITHOUT PREJUDICE UNDER RULE 41(a)(2)

On February 3, 2009, while Defendants' summary judgment motion (Doc. No. 35) was pending, Plaintiffs filed with the Clerk of Court a "Praecipe" asking the Clerk to "[k]indly withdraw the Plaintiffs' Complaint without prejudice" in this action. (Doc. No. 61). As Plaintiffs' request was neither stipulated to by all the parties nor made before Defendants served either an answer or a motion for summary judgment, Plaintiffs cannot voluntarily dismiss their case in the absence of a court order. Fed. R. Civ. P. 41(a). The Court will therefore construe Plaintiffs' "Praecipe" as a motion for voluntary dismissal without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure. See Morris v. City of Hobart, 39 F.3d 1105, 1109 (10th Cir. 1994) ("Rule 41(a)(2) does not require that the plaintiff's request for dismissal take any specific form; it requires only that the court approve such a request for dismissal."), cert. denied, 514 U.S. 1109 (1995); Bangor Baptist Church v. Maine, 92 F.R.D. 123, 124-25 (D. Me. 1981) ("The notice of dismissal is to be treated as a motion for dismissal under Rule 41(a)(2).").

Rule 41(a)(2) states that, "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, *on terms that the court considers proper*." Fed. R. Civ. P. 41(a)(2) (emphasis added). Unless the court order states otherwise, a dismissal under Rule 41(a)(2) is without prejudice. Id. "A voluntary dismissal without prejudice is not a matter of right." Connor v. Corporate Life Consultants, No. 06-2831, 2006 WL 2828865, at *1 (E.D. Pa. Sept. 29, 2006). Rather, "[a] motion for voluntary dismissal under Fed. R. Civ. P. 41(a)(2) lies within the sound discretion of the district court." Citizens Sav. Ass'n v. Franciscus,

5

120 F.R.D. 22, 24 (M.D. Pa. 1988) (citing Ferguson v. Eakle, 492 F.2d 26, 28 (3d Cir. 1974));

see also Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d 46, 51-52 (1st Cir. 1981) ("A

district judge does not abuse his discretion in granting a motion to dismiss without first holding a

hearing if he is familiar with the relevant issues . . . and if the defendants have adequate notice

and opportunity to be heard on the plaintiff's motion to dismiss.").

     Though motions for voluntary dismissal under Rule 41(a)(2) should generally be granted,

in ruling on such a motion, "a court must examine the prejudice to the defendant, both in terms

of legal prejudice and litigation expense."  See Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.,

585 F. Supp. 2d 645, 652-53 (M.D. Pa. 2008) (citing Schandelmeier v. Otis Div. of

Baker-Material Handling Corp., 143 F.R.D. 102, 102-03 (W.D. Pa. 1992)); see also In re Paoli

R.R. Yard PCB Litig., 916 F.2d 829, 863 (3d Cir. 1990) ("Rule 41 motions should be allowed

unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit.")

(internal quotations omitted), cert. denied, 499 U.S. 961 (1991); Ferguson, 492 F.2d at 28-29;

United States v. Eighteen Various Firearms, 148 F.R.D. 530, 531 (E.D. Pa. 1993); Buse v.

Vanguard Group of Inv. Cos., No. 91-3560, 1994 WL 111359, at *3 (E.D. Pa. Mar. 31, 1994)

(stating that the court "must consider the legitimate interests of both parties").  The prejudice

must be substantial and "the prospect of a subsequent lawsuit is not sufficient to deny a motion

without prejudice."  Connor, 2006 WL 2828865, at *1; see also Peltz v. Sears, Roebuck & Co.,

367 F. Supp. 2d 711, 715 (E.D. Pa. 2005).  Relevant factors in this analysis include the

following: (1) whether the expense of a second litigation would be excessive and duplicative; (2)

how much effort and expense Defendants expended in preparing for trial; (3) the extent to which

the case has progressed; (4) Plaintiffs' diligence and explanation in bringing the motion to

dismiss; and (5) whether the dismissal is designed to evade federal jurisdiction and frustrate the removal statute's purpose.  See Connor, 2006 WL 2828865, at *1; see also Dodge-Regupol, 585 F. Supp. 2d at 652; Pappas v. Township of Galloway, 565 F. Supp. 2d 581, 594 (D.N.J. 2008); Peltz, 367 F. Supp. 2d at 715; Schandelmeier, 143 F.R.D. at 102-03; Citizens Sav., 120 F.R.D. at 25.  Whether a dispositive motion is pending by the non-moving party is also a factor to be considered.  See Dodge-Regupol, 585 F. Supp. 2d at 652; Schandelmeier, 143 F.R.D. at 103.

An examination of these factors demonstrates that Defendants would be substantially prejudiced if the Court were to grant Plaintiffs' request for voluntary dismissal without prejudice. If the Court were to dismiss this matter without prejudice, Defendants would be subject to a second lawsuit until minor Plaintiff E.M.G. turns twenty years of age, which is three years away. (Pls.' Rule 41 Br. at 4).  Notwithstanding the prospect of a second lawsuit, Defendants have incurred significant effort and expense litigating this matter, including the drafting of a motion for summary judgment which was opposed by Plaintiffs.  Defendants have also filed a motion *in limine* (Doc. No. 59) and the April 27, 2009 trial date is quickly approaching.  (Doc. No. 60). Similarly, this case is far along and at a critical juncture, as extensive discovery has been completed and a ripe dispositive motion is currently pending before the Court.  Plaintiffs have also not exercised diligence in bringing forth their motion to withdraw their Complaint. Plaintiffs filed their "Praecipe" seeking withdrawal approximately 22 months after they commenced this action and nine months after Defendants filed their motion for summary judgment.  Fact discovery was completed on April 1, 2008, ten months before Plaintiffs filed their dismissal request.  (Doc. No. 24).  Plaintiffs had ample opportunity to evaluate the evidence uncovered in discovery, but instead opted to seek dismissal at this late stage.  Finally, Plaintiffs

have not provided an adequate explanation as to why they are now seeking dismissal.  Plaintiffs

acknowledge in their memorandum of law that they decided to seek voluntary dismissal after

"they realized that they were going to have great difficulty meeting their burden of proof."  (Pls.'

Rule 41 Br. at 4).  If Plaintiffs are attempting to withdraw their Complaint to avoid an adverse

determination on Defendants' motion for summary judgment, the Court is certainly not inclined

to grant Plaintiffs' request.  See Gonzalez v. Jose Santiago, Inc., 141 F. Supp. 2d 202, 205

(D.P.R. 2001) ("The Court has reviewed Co-defendants' motion for summary judgment and . . .

it finds that they are entitled to a final judgment of dismissal with prejudice on that motion.

Thus, Co-defendants would suffer prejudice from a dismissal without prejudice.").[4]

Accordingly, based on the totality of these factors, Plaintiffs' dismissal request is denied.

See Dodge-Regupol, 585 F. Supp. 2d at 652-53 (refusing to dismiss claims without prejudice

where the case had been pending for more than two years and nine months, significant discovery

had been conducted, defendant had incurred substantial expenses litigating the case, and plaintiff

provided no explanation for the abrupt withdrawal of its claims); Schandelmeier, 143 F.R.D. at

102-03 (denying plaintiffs' request for voluntary dismissal without prejudice where plaintiffs

made their request after their case had been both pending for twenty months and scheduled for

trial, and plaintiffs did not explain why they sought dismissal without prejudice).

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record, including pleadings, depositions,

affidavits, and answers to interrogatories, demonstrates "that there is no genuine issue as to any

---

[4] The fifth factor—whether the dismissal is designed to evade federal jurisdiction and frustrate the removal statute's purpose—is inapplicable to this case.

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and

all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 255 (1986). It is not the role of the trial judge "to weigh the evidence and determine the

truth of the matter, but to determine whether there is a genuine issue for trial." Id. at 250.

Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge." Id. at 255. Rather, the

question is whether "the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## ANALYSIS

**I.    Section 1983 Claim Against the Wilson Area School District**

Plaintiffs claim that WASD[5] supported a "policy, custom, practice or procedure" that

permitted and condoned the actions of Palmer. (Compl. ¶ 31). A municipality "may not be sued

under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc.

Servs., 436 U.S. 658, 694 (1978); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 126

(1988). However, when execution of a municipality's policy or custom inflicts a constitutional

injury, the municipality can be liable under Section 1983. Id. It is well-established that students

---

[5] Plaintiffs' claim against Doug Wagner and Dennis Harper in their official capacities will be treated as a claim against WASD, as WASD is the real party in interest. A.M. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 580 (3d Cir. 2004) ("A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself."); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Irene B. v. Philadelphia Acad. Charter Sch., No. 02-1716, 2003 WL 24052009, at *9 (E.D. Pa. Jan. 29, 2003) ("Since official-capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent, it is appropriate to dismiss the claims against the individual in his official capacity and retain them against the real party in interest.") (internal quotation omitted).

have a constitutional right to be free "from invasion of [their] personal security through sexual abuse." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990).  Further, "a teacher's sexual molestation of a student is an intrusion of the schoolchild's bodily integrity."  Id. at 727.  To establish liability under Section 1983 with regard to a sexual abuse claim, Plaintiffs must show that: (1) WASD's policy, practice, or custom played an affirmative role in bringing about the sexual abuse, and (2) WASD acted with deliberate indifference to that abuse.  Black v. Indiana Area Sch. Dist., 985 F.2d 707, 712 (3d Cir. 1993); see also Stoneking, 882 F.2d at 725.

To be held responsible for the deprivation of a constitutional or statutory right, WASD must have had a policy, practice, or custom that caused the deprivation.  See Monell, 436 U.S. at 690-91.  A "custom" may be identified through "a course of conduct . . . when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotation omitted).  The standard in the Third Circuit for determining whether WASD established such a policy, practice, or custom is set forth in Stoneking, 882 F.2d 720.  There, the Court concluded that, while it is well-established that students have a constitutional right to be free from sexual abuse, the "mere failure of supervisory officials to act or investigate cannot be the basis of liability."  Id. at 726, 730.

In Stoneking, the principal and assistant principal of a high school were alleged to have followed a practice of "reckless indifference to instances of known or suspected sexual abuse of students by teachers."  Id. at 724-25.  Sexual misconduct and physical abuse were reported to supervisors by students and teachers alike.  However, no action was taken, and the students, in

some instances, were chastised and warned by school administrators that it was merely their word against the teacher. Id. at 728-29. Notably, the school principal recorded allegations of sexual abuse in a secret file at his home, rather than the teachers' personnel files. Id. at 729. Further, the defendants continued to give the teachers excellent performance evaluations and discouraged and/or intimidated parents from pursuing their complaints. Id. at 728-29. By concealing complaints of abuse, discouraging such complaints, failing to investigate such complaints, and requiring complainants to apologize to the accused teachers, the plaintiff alleged that these school officials "created a climate which, at a minimum, facilitated sexual abuse of students by teachers." Id. at 725. Because the evidence proffered by the plaintiff "asserted a sufficiently tenable theory that there was an 'affirmative link' between her injury and the policies and practices that [the school officials] employed," the Court held that there were triable issues of fact precluding summary judgment. Id. at 730-31.[6]

WASD's sexual harassment policies and its discipline of Palmer after discovering prior allegations of improper conduct do not satisfy the Stoneking standard for establishing the existence of either a practice or custom that permits sexual abuse. Plaintiffs cite several incidents in Palmer's past in support of their argument that a reasonable jury could link E.M.G.'s injury to WASD's policies and practices—incidents which are discussed in more detail below. WASD

---

[6] See also Doe v. Methacton Sch. Dist., 880 F. Supp. 380, 383-85 (E.D. Pa. 1995) (declining to dismiss Section 1983 claim against defendant school district where school district, after learning of sexual abuse by teacher, permitted teacher to resign for "personal reasons," failed to report the abuse, and subsequently gave teacher a satisfactory recommendation when another school district inquired); C.M. v. Southeast Delco Sch. Dist., 828 F. Supp. 1179, 1184-86 (E.D. Pa. 1993) (denying summary judgment where at least five teachers complained to school officials repeatedly about witnessing abusive and offensive conduct of a special education teacher towards his students; the complaints included striking students, spraying them with water and Lysol, physically abusing them until they cried for help, unauthorized touching of students, requiring students to stay in his classroom until the last school bus departed and then driving them home, openly looking up the dresses of female students and, in one instance, tripping a female student and then picking her up by her breasts).

and its employees, however, did not sit on their hands in response to these prior incidents of inappropriate behavior by Palmer but rather documented and reprimanded Palmer for each incident.  For example, in July 1994, WASD even terminated Palmer in response to an allegation of misconduct, only to have him subsequently reinstated by the Secretary of Education.  (Pls.' Ex. 10).  WASD also unsuccessfully attempted to terminate Palmer after it investigated the complaints of E.M.G. and other students in 2004, but Palmer was reinstated with back pay by an arbitrator in 2006.  (Defs.' Ex. 12).  The disciplinary measures taken against Palmer as a result of these incidents are in stark contrast to the actions of the school district in Stoneking.  There, the actions of the accused teacher were covered up and ignored by the school district.  The school district then intimidated accusers to recant their accusations of harassment.  Further, the school principal in Stoneking kept a secret file of all incidents at his home.  In the case *sub judice*, however, complaints of Palmer's prior improper conduct were routinely recorded in Palmer's personnel file and acted upon.  Plaintiffs also cite the deposition testimony of Principal Dennis Harper where he testified that Palmer's actions "were probably the most serious" disciplinary issues Harper had dealt with in his career.  (Harper Dep. at 25; Pls.' Br. at 9).  This statement would be particularly compelling if the record reflected an ambivalence on the part of the School District as to Palmer's behavior.  However, no evidence has been presented indicating such ambivalence.[7]  As opposed to the ignorance, secrecy, and intimidation used by the school officials in Stoneking, the prior discipline of Palmer was well-documented and transparent.

---

[7] Plaintiffs further contend that the "Wilson Area School District attempted to maintain the *status quo*, by punishing Palmer just enough to satisfy parents while avoiding entanglements with Palmer and the teacher's union." (Pls.' Br. at 5).  Plaintiffs, however, have not presented any evidence that this was the motivation behind the School District's actions in disciplining Palmer.  Such a conclusion is purely speculative.  See Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("[A]n inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment.").

There was no "cover-up" or attempt to hide these prior incidents as there was in Stoneking. Rather, WASD identified each incident as serious and disciplined Palmer accordingly.

WASD's response to the accusations made by Plaintiffs is also distinguishable from the facts described in Stoneking.  Unlike Stoneking, neither E.M.G. nor her parents complained to any school official about Palmer's conduct prior to February 9, 2004—when E.M.G. first reported the alleged abuse.  Defendant Principal Dennis Harper and non-party Vice Principal Post initiated a preliminary investigation on the same day Palmer's conduct was reported. (Harper Dep. at 26).  Subsequently, a formal investigation was conducted, and written reports were produced in compliance with the rules stated in the Student Handbook.  (Defs.' Exs. 2 and 4; Defs.' Ex. 11, at 36).  Palmer was suspended with pay almost immediately after E.M.G.'s complaint was made, which removed him from contact with students.  Later, he received an unpaid suspension, and the School District, along with Wagner and Harper, attempted to permanently terminate him.  (Harper Dep. at 24; Wagner Dep. at 34-37; Defs.' Ex. 6).  This investigation and WASD's prompt remedial action were entirely consistent with WASD's stated policy that "complaints of harassment shall be investigated promptly and corrective action be taken."  (Defs.' Ex. 11, at 34); see Black, 985 F.2d at 712 (holding that, where allegations of abuse were promptly addressed and the wrongdoer was immediately removed, there was no evidence that a policy or condonation of sexual abuse existed that would justify Stoneking liability); K.K. v. Weeks, No. 04-2290, 2007 WL 1455888, at *8 (M.D. Pa. May 15, 2007) (granting summary judgment as to school district and concluding that school district did not have a policy or custom of permitting teachers to engage in unconstitutional conduct toward students where school officials were not aware of allegations of sexual abuse against minor plaintiffs or

13

other students prior to disclosure of such abuse by minor plaintiffs to their parents).

Furthermore, the School District simply cannot be said to have acted with deliberate indifference to a likelihood that Palmer would inflict a constitutional injury on E.M.G.  In order for Plaintiffs to establish deliberate indifference on the part of WASD, "something more culpable must be shown than a negligent failure to recognize a high risk of harm to plaintiffs."  Black, 985 F.2d at 712-13 (internal quotations omitted).  Here, the central question is whether a reasonable jury could conclude that, prior to the abuse inflicted on E.M.G., a substantial danger existed that Palmer would sexually harass and invade the bodily integrity of a female student, and that WASD was aware of this danger.  See Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 708-10 (E.D. Pa. 2007).  Again, Plaintiffs point to several incidents in Palmer's past that they contend should have put WASD on notice of his likelihood to commit acts of sexual harassment and abuse.  They contend that WASD had knowledge of these incidents, yet failed to act appropriately, which ultimately led to the abuse of E.M.G.  (Pls.' Br. at 5-9).  However, these prior incidents are insufficient to support Plaintiffs' claim because the incidents, taken together along with WASD's various corrective responses, are not sufficiently similar to the sexual harassment and invasion of bodily integrity suffered by E.M.G.

The first incident cited by Plaintiffs occurred in October 1989, where Palmer, who was then working at Wilson High School, made inappropriate comments about a female student's leg hair and attire.  (Pls.' Ex. 7; Pls.' Stmt. of Facts ¶ 27.A).  Palmer received a written reprimand for the comments and subsequently was given an unsatisfactory evaluation.  (Pls.' Ex. 7).  At the same time, Palmer was also disciplined for inappropriately questioning a female student in response to her request to use the bathroom.  During this incident, Palmer asked the female

student whether she needed to do "one or two."  Upon her return from the bathroom, Palmer

asked her whether "everything came out ok."  (Pls.' Ex. 7; Pls.' Stmt. of Facts ¶ 27.B).  While

these two incidents are distasteful, no inappropriate touching occurred as alleged here, and the

incident with the student going to the bathroom cannot be considered severe enough to constitute

sexual harassment.  See Kelly v. Senior Ctrs., Inc., 169 F. App'x 423, 429 (6th Cir. 2006)

(holding that comments about an African-American staff member's bathroom habits, while

offensive, did not amount to a pervasive, aggressive, or constant course of conduct).  While it is

possible that the comments regarding the female student's leg hair "could be construed as sexual

harassment" (Pls.' Ex. 7), these incidents do not provide WASD with notice that Palmer likely

would physically and sexually abuse E.M.G. or other female students.  Further, Palmer was

disciplined and given an unsatisfactory teacher rating based on these complaints.  (Pls.' Ex. 8;

Pls.' Stmt. of Facts ¶ 27.F).[8]

  The next incident cited by Plaintiffs occurred in 1994, where Palmer asked a female high

school student to cash a winning lottery ticket for him in order to avoid paying income tax on the

$3,000 proceeds.  (Pls.' Ex. 9; Pls.' Stmt. of Facts ¶ 27.G).  As a result of this incident—which

neither constitutes sexual harassment nor bears a relationship to an assault on a student's bodily

integrity—WASD attempted to terminate Palmer's employment.  (Pls.' Ex. 9).  Four public

termination hearings were held before the Wilson Area School Board, and Palmer was

subsequently terminated in July 1994.  (Pls.' Ex. 10).  Palmer appealed the termination decision

---

   [8] The letter formally reprimanding Palmer for these two incidents also notes that, in the spring of 1987, Palmer "was instructed to be careful of his comments and avoid private or personal information about students as a class topic for comment or discussion."  (Pls.' Ex. 7).  This instruction was communicated to Palmer by school officials after he made comments to his class about a female student's brothers and her hospitalization for at-risk behaviors.  (Id.; Pls.' Stmt. of Facts ¶ 27.C).  Similarly, these comments could not be construed as sexual harassment or sexual abuse.

to the Secretary of Education.  (Id.).  On March 20, 1995, the Secretary conducted a *de novo*

review, reversed the Board's dismissal, and reinstated Palmer with back pay.  (Id.).  WASD

appealed to the Commonwealth Court, which affirmed the Secretary's decision on March 13,

1996.  (Id.).  Thus, WASD disciplined Palmer for his inappropriate behavior and terminated him.

Further, they appealed his reinstatement to the Commonwealth Court.  (Id.).  WASD's effort to

terminate Palmer in this instance does not reflect passive behavior on the part of the School

District, but shows both a vigilance and determination to prevent Palmer from engaging in

further inappropriate behavior as a WASD teacher.

       To support their claims, Plaintiffs cite a number of additional incidents that took place

after Palmer's reinstatement.  Plaintiffs reference an August 1997 incident in which Palmer

loaned a copy of Stephen King's "Skeleton Crew" to a female student.  (Pls.' Ex. 11; Pls.' Stmt.

of Facts ¶ 27.J).  This book contained adult language, adult themes, and sexual content.  (Pls.'

Ex. 11).  WASD, through the then-Superintendent, sent a letter to Palmer concerning the

incident, and this letter was recorded in his file.  (Id.).  Again, this incident cannot be considered

sexual harassment and certainly cannot be likened to Plaintiffs' claims for invasion of bodily

integrity.  In December 1999, Palmer was also disciplined for slapping a male student's head.

(Pls.' Ex. 12; Pls.' Stmt. of Facts ¶ 27.K).  He again received a written reprimand for this

incident.  (Pls.' Ex. 12).  Although physical in nature, this incident cannot be construed as sexual

harassment or similar to the type of abuse alleged here.  Additionally, in April 2003, Palmer was

issued a reprimand for statements he made to a parent during a parent/teacher conference, in

which Palmer commented on a female student holding hands with another female student, and

the two girls being unnaturally infatuated with one another.  (Pls.' Ex. 13; Pls.' Stmt. of Facts ¶

27.L).  In May 2003, Defendant Principal Dennis Harper also issued a written reprimand to Palmer as a consequence for some inappropriate comments made by Palmer to several students.[9] (Pls.' Ex. 14; Pls.' Stmt. of Facts ¶ 27.M).  These inappropriate comments to the parent and the students in 2003 were reflected in Palmer's teaching evaluation.  (Pls.' Ex. 14).

      While all of these prior incidents reflect inappropriate conduct by Palmer, they do not rise to the level of sexual harassment or invasion of bodily integrity that would create a suspicion on the part of the School District that Palmer likely was going to subject E.M.G. or other female students to sexually abusive conduct.  None of these incidents, except the slapping of the male student's head, were the product of Palmer physically contacting a student.  Indeed, E.M.G.'s complaint to the School District represented the first instance in which WASD became aware of allegations that Palmer touched a female student.  Moreover, none of the improper comments made by Palmer prior to 2003-2004 school year were so sexually-laced that the School District was put on notice that Palmer likely would sexually harass female students.  Because the School District was not on notice of any predisposition on the part of Palmer to commit sexual abuse—and given the School District's repeated reprimands and condemnation of Palmer's conduct—the School District's actions in response to Palmer's prior conduct do not constitute deliberate indifference, nor can these actions be construed as creating a policy, practice, or custom that played an affirmative role in bringing about the sexual abuse inflicted on E.M.G. Indeed, these prior instances "do not disclose a pattern of persistent and widespread unconstitutional conduct so permanent and well-settled as to create a genuine issue of material

---

     [9] Palmer's comments included: "You're an idiot," "I can't get past your big butt!," "You're short," "You should go home and slap your parents because you're ugly!," and "You'd have to stand too close to the fire," alluding to the size of a male student's penis.  (Pls.' Ex. 14).

fact regarding an impermissible custom or policy."  See K.K., 2007 WL 1455888, at *8.

Accordingly, WASD cannot be held liable under Section 1983 as a matter of law.[10]

## II.    Section 1983 Claims Against Doug Wagner and Dennis Harper in Their Individual Capacities

Plaintiffs also contend that Superintendent Doug Wagner and Principal Dennis Harper are

individually liable under Section 1983.  (Compl. ¶¶ 35-48).  To establish a Section 1983 claim

against these individuals, Plaintiffs must "demonstrate a violation of a right protected by the

Constitution or laws of the United States that was committed by a person acting under the color

of state law."  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (en banc).  Harper and Wagner

concede that they acted under the color of state law, but contend that Plaintiffs are unable to

prove that "Harper and Wagner caused [E.M.G.'s] injuries by failing to investigate Palmer's

prior conduct and continuing to allow Palmer to function as [a] faculty member" within the

School District.  (Defs.' Br. at 7).

One court within the Eastern District of Pennsylvania has adopted the Fifth Circuit's test

for determining whether a school supervisor could be found personally liable under Section 1983

for a subordinate's violation of a student's constitutional right to bodily integrity.  For personal

liability to exist under this test, Plaintiffs must show that: (1) Defendants learned of facts or a

---

[10] See Black, 985 F.2d at 713 (holding that school superintendent was not personally liable under Section 1983 where he promptly investigated two prior incidents of sexual molestation and took appropriate action); Colburn v. Upper Darby Twp., 946 F.2d 1017, 1028-29 (3d Cir. 1991) (holding that, where intoxicated inmate committed suicide, municipality's failure to either hold intoxicated detainees in a detoxification institution or subject intoxicated inmates to around-the-clock personal surveillance did not constitute deliberate indifference); Kline v. Mansfield, 255 F. App'x 624, 628-29 (3d Cir. 2007) (affirming grant of summary judgment for school district where school district had knowledge of contacts between plaintiff minor student and teacher, but was not on notice that plaintiff was having sexual contact with teacher); Shepard v. Kemp, 912 F. Supp. 120, 128-29 (M.D. Pa. 1995) (holding that no deliberate indifference existed where, despite the fact that school officials were aware that teacher was spending inordinate amounts of time with teacher, school officials were not aware of wrongdoing).

pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion

that the subordinate was sexually abusing the student; (2) Defendants demonstrated deliberate

indifference toward the constitutional rights of the student by failing to take action that was

obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional

injury to the student.  See Chancellor, 501 F. Supp. 2d at 709-10 (citing Doe v. Taylor Indep.

Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994) (en banc)).  The Chancellor Court concluded that

this test is consistent with the Third Circuit's rule that a plaintiff can establish supervisory

liability under Section 1983 by showing that the supervisor "had knowledge of and acquiesced in

the subordinate's violations."  Id. at 710 (quoting A.M., 372 F.3d at 586) (internal quotations

omitted).  The Court agrees with the Chancellor Court's conclusion that this test is instructive in

determining whether individual supervisory liability exists.

     The first two elements require an examination nearly identical to the Court's earlier

analysis addressing whether WASD had a custom or policy of deliberate indifference that

violated E.M.G.'s constitutional right to be free from sexual abuse.  First, Harper and Wagner

investigated and disciplined Palmer after complaints were made about Palmer's conduct.  After

the complaints were made by E.M.G. and other female students on February 9, 2004, Harper and

Wagner immediately conducted an investigation, imposed a preliminary punishment, and

ultimately attempted (unsuccessfully) to terminate Palmer.  The actions of Harper and Wagner

can hardly be considered dilatory, but instead represent diligent efforts on the part of school

administrators to deal with a teacher who had engaged in problematic conduct.  Second, as stated

above, Palmer's prior acts of misconduct that were known (or should have been known) by

Harper and Wagner would not raise a suspicion that Palmer likely was going to subject female

students like E.M.G. to sexually abusive or harassing conduct.  While Palmer's alleged prior

actions were inappropriate, they did not rise to the level of sexual harassment or a bodily integrity

violation sufficient to place Wagner and Harper on notice.  Indeed, there is no evidence that,

prior to E.M.G.'s complaint, Harper and Wagner were aware of any physical sexual abuse

perpetrated by Palmer.[11]  "Only an exercise in impermissible judicial hindsight could justify

holding" Harper and Wagner liable for the actions of Palmer.  See Colburn v. Upper Darby Twp.,

946 F.2d 1017, 1027 (3d Cir. 1991) (quoting Belcher v. Oliver, 898 F.2d 32, 35 (4th Cir. 1990)).

Such an exercise of judicial hindsight is simply not permitted.[12]

### III.   Special Relationship Between Defendants and E.M.G.

As an additional independent basis of liability, Plaintiffs claim that E.M.G.'s Due Process

rights were violated by Defendants under the theory that a "special custodial relationship" existed

between Defendants and E.M.G.  (Compl. ¶¶ 29, 36, 43).[13]  While the Due Process Clause does

not impose an affirmative duty upon the state to protect its citizens, "when the state enters into a

special relationship with a particular citizen, it may be held liable for failing to protect him or her

---

[11] Because Harper and Wagner took appropriate action, there is no need to address the third element articulated by the Chancellor Court.

[12] See Black, 985 F.2d at 713 (school superintendent not personally liable); Colburn, 946 F.2d at 1025-27 (holding that defendant custodial officer could not be held individually liable for failing to prevent detained decedent's suicide because defendant's knowledge that decedent (i) was intoxicated, (ii) had been involved in an argument with her boyfriend, (iii) had tried to ingest three pills, and (iv) had an undischarged bullet in pocket did not suggest that decedent inmate had a vulnerability to suicide which defendant should have been aware); Williams v. Borough of West Chester, 891 F.2d 458, 465-67 (3d Cir. 1989) (holding that jail officials, who had no knowledge of detainee's suicidal tendencies, were not liable where they failed to remove detainee's belt and detainee subsequently hanged himself with it); Kline, 255 F. App'x at 629 n.6 (holding that defendant principal is not independently liable where no evidence exists establishing that he "knew or should have known that" that the teacher ever sexually abused the minor plaintiff).

[13] Liability based on the "special relationship" theory is independent from liability based on Section 1983. Accordingly, a plaintiff may maintain a viable section 1983 claim even if there is no predicate duty by the defendant to protect the plaintiff.  See Stoneking, 882 F.2d at 725.

from the private actions of third parties." D.R. v. Middle Bucks Area Vocational Technical Sch.,

972 F.2d 1365, 1368-69 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993).  "This liability

attaches under § 1983 when the state fails, under sufficiently culpable circumstances, to protect

the health and safety of the citizens to whom it owes an affirmative duty." Id. at 1369; see also

DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 197-200 (1989) (declining

to impose a constitutional duty upon a state to protect the life, liberty, or property of a citizen

from deprivations by private actors absent the existence of a special relationship).  The U.S.

Supreme Court in DeShaney addressed when such an affirmative duty exists.  There, the Court

concluded that an affirmative duty exists when the state has "restrain[ed] the individual's

freedom to act on his own behalf—through incarceration, institutionalization, or other similar

restraint of personal liberty," and that it is this act of restraint that "trigger[s] the protections of

the Due Process Clause." DeShaney, 489 U.S. at 200.  Thus, the Court left open the possibility

that this duty was not just owed to individuals in prison or otherwise institutionalized, but also to

other groups of people who are in custody by means of a "similar restraint of personal liberty."

See id.; see also D.R., 972 F.2d at 1370.  Because DeShaney opened the door to the "special

relationship" doctrine applying outside the context of prisoners and those restrained by state

institutions, it can be inferred that Plaintiffs' Complaint alleges liability on the ground that the

Philip F. Lauer Middle School restrained E.M.G. sufficient to establish a special relationship,

thereby triggering an affirmative duty on the part of the School District, Wagner, and Harper to

protect E.M.G.

The Third Circuit, however, held in D.R. that a special relationship does not exist

between a student and either a public school or school officials sufficient to trigger an affirmative

duty on the part of the school or its officials to protect its students.  See D.R., 972 F.2d at 1373.

The D.R. Court concluded that Pennsylvania's compulsory attendance requirement coupled with

*in loco parentis* authority of the public school did not result in an affirmative restraint leaving the

plaintiff student without a reasonable means of self-protection.  Id. at 1370.  This was the case

because parents remain both the primary caretakers of students and the decision-makers

regarding their well-being.  Id. at 1371.  This Court is bound by the principles articulated in D.R.

and, accordingly, concludes that no special relationship existed between Defendants and E.M.G.

sufficient to impose liability.  See also Black, 985 F.2d at 714 (applying D.R. and holding that no

special relationship existed between student and school system, especially where alleged

incidents took place on a school bus and the state did not require students to use bus to get to

school); Gremo v. Karlin, 363 F. Supp. 2d 771, 782 (E.D. Pa. 2005) ("The holding in D.R. that

schools and students do not have a special relationship for purposes of the Due Process Clause

continues to be binding in the Third Circuit.").

## IV.   Plaintiffs' Punitive Damages Claim and Individual Defendants' Qualified Immunity Defense

Because Plaintiffs have failed to present sufficient evidence for a reasonable jury to

conclude that Defendants violated E.M.G.'s constitutional rights under 42 U.S.C. § 1983, the

Court need not address whether Plaintiffs are entitled to punitive damages.  See South Port

Marine, LLC v. Gulf Oil Ltd., P'ship, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages,

however, do not constitute a separate cause of action, but instead form a *remedy* available for

some tortious or otherwise unlawful acts.").  Additionally, because Plaintiffs' claims do not

survive the initial inquiry into whether the conduct of Wagner and Harper caused a violation of a

constitutional right, the Court need not address whether they are immunized from suit under the doctrine of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (stating that the initial inquiry under the qualified immunity analysis is whether, construing the facts in the light most favorable to the party asserting the injury, the facts alleged show that the defendant's conduct violated a constitutional right), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 812 (2009) ("We now hold that the Saucier procedure should not be regarded as an inflexible requirement . . . . Our decision does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases.").

The Court notes that it is troubled by the alleged conduct of Palmer toward E.M.G. Assuming these allegations are true, this behavior is not only inappropriate, but may have life-long emotional ramifications for E.M.G.  (Pls.' Stmt. of Facts ¶¶ 12-20).  However, WASD, Wagner, and Harper do not bear any liability based on the allegations in the Complaint and the evidence uncovered during discovery.  Defendants in this action acted diligently in both investigating the complaints against Palmer and disciplining Palmer for his behavior.  Indeed, through no fault of the School District (and notwithstanding its attempts to terminate him), Palmer was reinstated on both March 20, 1995 and May 16, 2006 and allowed to continue teaching.  Accordingly, Defendants' motion for summary judgment (Doc. No. 35) is granted.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **D.C.G. and P.J.G on behalf of the** | : | |
| **minor child, E.M.G.,** | : | |
| **Plaintiffs** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **Case No.: 07-cv-1357** |
| | : | |
| **WILSON AREA SCHOOL** | : | |
| **DISTRICT, et al.** | : | |
| **Defendants** | : | |

## ORDER

AND NOW this 25th day of March, 2009, upon consideration of Plaintiffs' "Praecipe to Withdraw Complaint Without Prejudice"—which the Court construes as a Motion to Withdraw under Rule 41(a)(2) of the Federal Rules of Civil Procedure—and the parties' supplemental memoranda of law, this Motion (Doc. No. 61) is DENIED.  Furthermore, upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs' Response, and all appended exhibits, it is hereby ORDERED that this Motion (Doc. No. 35) is GRANTED.  Accordingly, JUDGMENT IS ENTERED in favor of Defendants Wilson Area School District, Doug Wagner, and Dennis Harper, and against Plaintiffs.

IT IS FURTHER ORDERED that Third-Party Defendant Walter Palmer's Motion to Vacate the Default Judgment (Doc. No. 47) is DENIED as moot.  Additionally, Defendants' Motion *in Limine* (Doc. No. 59) is DENIED as moot.

The Clerk is ORDERED to close this case for statistical purposes.

BY THE COURT:


*/s/ Thomas M. Golden*
THOMAS M. GOLDEN, J.